## W. W. BARR ET AL. V. O. H. SIMPSON.

### Decided February 20, 1909.

**1.—Injunction—Cloud upon Title—Vendee of Married Woman— Sale under Execution.**

Where a married woman purchases land and the conveyance is to her but does not state that the land is to be her separate property, the law presumes it to be community property and subject to the husband's debt; and, if in fact it is purchased and paid for out of her separate means and is to become her separate property, a sale under an execution against her husband will cast a cloud upon her title, which cloud can only be shown by evidence dehors the recitations in the deed, and an injunction will lie to prevent such sale at her suit or that of her vendee.

**2.—Community Property—Gift of Cattle to the Wife—Increase.**

When a woman acquires title by gift during coverture the increase becomes community property, and if land be acquired by her during the marriage and is paid for by the cattle and increase or money realized by the sale of same, the community will own an interest in the land in proportion to the increase. ·

**3.—Same—Lands Acquired During Marriage.**

Where land is conveyed to a woman during her coverture and same is paid for in part out of her separate funds and in part by funds borrowed by her on the note of herself and husband secured by their deed of trust on the land, the land becomes community to the extent of the loan in the absence of evidence that the lender agreed to look to her alone for payment, or that it should be paid out of her separate estate.

**4.—Same—Earnings of Married Woman.**

Money earned by a woman during her coverture by teaching school, is community property, and, in the absence of any agreement between herself and her husband that same shall become her separate estate, land purchased therewith is community.

ON REHEARING.

**5.—Injunction—Sale under Execution.**

Where land was conveyed to a married woman during her coverture but the deed did not recite that it was for her separate use and benefit, her vendee, paying a valuable consideration and taking a deed from the husband and wife which was recorded. was entitled to an injunction to restrain a sale under an execution against the husband under a judgment against him existing at the time of such vendee's purchase but which constituted no lien at that time upon the land, though the land may have been community property of his vendors, in the absence of any attack on the validity of the deed or on the sale as being in fraud of creditors.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*J. M. Moon,* for appellants.—An injunction does not lie at the instance of a third person to restrain the sale of real estate under execution, unless to protect a secret title which might be put in jeopardy by the sale, or upon which a cloud would be cast by such sale. Carlin v. Hudson, 12 Texas, 203; Whitman v. Willis, 51 Texas, 422; Purington v. Davis, 66 Texas, 455; Mann v. Wallis, 75 Texas, 613; Paddock v. Jackson, 41 S. W., 700; Spencer v. Rosenthall, 58 Texas, 4;

Chamberlain v. Baker, 67 S. W., 532; Magoffin v. San Antonio Brewing Co., 84 S. W., 843.

Appellee having acquired his title and placed the same of record before appellants' levy, the record of which was full notice to appellants of appellee's title to said land, and also notice to all persons buying at the execution sale, the levy on and sale of said land would not affect appellee's title or possession, and injunction does not lie to prevent such sale.

All property acquired during marriage on credit, as well as all property acquired and paid for from interest, profits, or increase of cattle derived from the wife's separate property, or from money made by the wife in any kind of employment, is community property and subject to the husband's debts. Epperson v. Jones, 65 Texas, 425; Ezell v. Dobson, 60 Texas, 331; Smith et al. v. Bailey, 66 Texas, 554.

*P. B. Ward* and *Spence & Baker,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—O. H. Simpson, as plaintiff, sued W. W. Barr, as constable of Johnson County, Texas, and also J. A. Templeton, Emmett Patton, composing the firm of Templeton & Patton, and T. M. Stribling, as defendants, and sought an injunction against them to restrain a threatened sale under execution of the plaintiff's lands, situated in Johnson County, Texas, comprising two separate tracts, one for 108½ acres and the other of 50 acres. Plaintiff alleged that he purchased said land on March 9, 1906, from Sarah U. Simpson, who was joined *pro forma* in the conveyance by her husband, R. H. Simpson; that he paid $400 cash and assumed the payment of a lien debt upon the land in the sum of $500, owing to a mortgage company of Dallas, Texas; and that in further consideration of the conveyance of the land he executed his own note in the sum of $1727 to the order of the said Sarah U. Simpson. That the 108½ acre tract was the separate property of the said Sarah U. Simpson, as was also the 50 acre tract at the time of the conveyance to him, and further, that the 50 acre tract was a part of the homestead at that time of the said Sarah U. Simpson and R. H. Simpson. Plaintiff alleged that on December 7, 1900, defendants, Templeton & Patton, recovered a judgment against the said R. H. Simpson and another for $173.60 in Justice Court, precinct No. 1, Johnson County, Texas; that defendant Stribling has an interest in the said judgment; that on August 7, 1907, said defendants caused to be issued and placed in the hands of defendant Barr, as constable, an execution on said judgment, and that under their direction the said constable levied upon the plaintiff's lands as the property of the said R. H. Simpson, and that the constable had advertised the sale thereof for the September, 1907, sale day. He averred that the lands were not the property of the defendants in execution nor of either of them, and denied that the said lands were the property of either of the said defendants in execution at the time of the levy thereon. He averred that Sarah U. Simpson, wife of R. H. Simpson, had purchased the said lands in controversy as her separate property, paying for same out of her separate funds, but specially averred that while

this was the fact, still the deeds to Mrs. Simpson did not limit the property to her separate individual use and benefit, but on the contrary, the deeds while made to her would be construed as conveying the land to her as the community property of herself and her husband, R. H. Simpson; that such was the presumption arising from the form of the conveyance. Plaintiff charged that the defendants were proceeding with their levy and threatened sale of the property upon the said assumption drawn from the face of said deeds that the said lands were the community property of Sarah U. and R. H. Simpson, the latter being one of defendants in their execution, and plaintiff averred that it would require evidence dehors the record to show the facts and that the property was, as a matter of truth, paid for with the separate money of Mrs. Simpson and thus that the threatened sale of the lands as the property of R. H. Simpson, if made, would cast a cloud upon plaintiff's title to said lands, against which he was entitled to relief in a court of equity. Plaintiff averred that the defendants would deny also that the 50 acre tract was a part of the homestead of Sarah U. and R. H. Simpson at the time plaintiff purchased same, and that they would further deny that the lands involved in this suit were the separate property of said Sarah U. Simpson. He further averred that he purchased said lands for the purpose of reselling same as soon as he could find a suitable purchaser at a price satisfactory to him; that the Colonial & United States Mortgage Company held a lien debt against the 108½-acre tract, the payment of which plaintiff had assumed; that said debt would soon mature and plaintiff would be unable to pay off such debt unless he is enabled to make his sale of the land, or if he could not sell the land he would be compelled to negotiate a renewal of the lien indebtedness which he is advised he can not do if the lands were sold under the threatened execution by the defendants. Plaintiff further averred that he was then negotiating a sale of the 108½-acre tract to a purchaser named Burks, who was ready and able to buy the land at a price satisfactory to plaintiff, provided the title is not encumbered by the threatened sale under execution, but that if such sale were made and a hostile title thereby acquired and put of record to said lands, as defendants were about to do, that plaintiff would be unable to make the sale to the said Burks, with whom he averred he had a written contract for the purchase of the land duly executed, conditioned, however, upon plaintiff being able to convey a good and marketable title to his land, which plaintiff averred he could do only in the event that the threatened execution sale was not made. That if plaintiff's lands were sold under the said execution and levy by defendants that such sale would cast a cloud upon plaintiff's good and perfect title and would prevent him from making the pending sale, and also that the execution sale, if made, would result in the mortgage company refusing to renew the loan or lien indebtedness upon the 108½-acre tract. And further, that if the lands were sold and if the defendant constable should execute a deed to the purchaser, that it would require extrinsic evidence to remove the cloud from the title to the land and would result in irreparable injury to plaintiff. He therefore prays for injunction restraining all the defendants from pro-

ceeding with their threatened execution sale of his lands. A writ of injunction issued as prayed for.

The defendants answered by general demurrer, general denial, and with two other special pleas not necessary to be here stated. Upon the issues raised by these pleadings a trial was had before the court without a jury, and on January 27, 1908, final judgment was rendered, making perpetual the injunction theretofore issued. Defendants perfected an appeal.

The allegations of the petition were sufficient when tested by a general demurrer. These allegations, if true, show that the plaintiff's title to the land is derived through a married woman, and that the land was purchased and paid for by her out of her separate funds, and that the conveyance to her was made during her coverture and did not on its face show that the property was her separate estate. If the land was in fact purchased by Mrs. Simpson with her separate means and was to become her separate property, and the deed on its face did not set forth that the land was to be her separate property, the law presumes it to be community property and subject to the husband's debts, and a sale by virtue of the levy of an execution against the husband would cast a cloud upon the title, which cloud could only be shown by evidence dehors the recitations in the deed. In such a case injunction will lie to prevent a cloud on her title. (Roe v. Dailey, 1 Posey, Unreported Cases, 247; Huggins v. White, 7 Texas Civ. App., 563; Gober v. Smith, 36 S. W., 911; Ratcliff v. Call, 72 Texas, 491; Day L. & C. Co. v. State, 68 Texas, 526 and 536; Sumner v. Crawford, 91 Texas, 129; Ormsby v. Ottman, 85 Fed. Rep., 492; Pixley v. Huggins, 15 Cal., 128.)

The 108½-acre tract was purchased by Mrs. Simpson from one Blackstock, in October, 1902, and during her coverture. She paid four hundred dollars cash, which she says was the proceeds received from the sale of cattle given her by her sons. The evidence is not clear whether this sum was derived from the sale of the cattle originally given her or whether it also embraces the moneys received from their sale and the sale of their increase. Their increase would be community property and not her separate property. In view of the trial court's finding that this $400 was the separate property of Mrs. Simpson, we would not feel justified in setting aside that holding. As the case must go back for another trial we thought best to call attention to evidence in this respect. It is conceded that the balance of the consideration of this 108½ acres was the assumption by Mrs. Simpson of three outstanding notes against the property amounting to $342.50. These notes were taken up and a new loan on the land negotiated for $417.62. This loan was in favor of a mortgage company. It was secured by a deed of trust on the land. Both the note and deed of trust securing it were signed by Mrs. Simpson and her husband. There was no evidence that the mortgage company agreed to look alone to Mrs. Simpson for payment of this loan or that it should be paid out of her separate estate. This loan was on the property when appellee purchased the same and he assumed it as a part of the consideration to be paid by him for the land. It is clear that so far as this tract was paid for out of the separate funds of

Mrs. Simpson, it became her separate estate. But insofar as it was paid for in funds borrowed by her on the note of herself and husband and secured by a deed of trust executed by herself and husband upon the property, it was community property. (Epperson v. Jones, 65 Texas, 425; Schuster v. Bauman, 79 Texas, 179; Ullmann v. Jasper, 70 Texas, 447; Sinsheimer v. Kahn, 6 Texas Civ. App., 143.) If it was community property, it was subject to appellant's lien.

As to the 50-acre tract, the evidence shows that it was purchased by Mrs. Simpson in 1891, during her coverture. Four hundred dollars of the purchase money was paid in cash and she gave her note for the balance. The four hundred dollars consisted of money given her by her father and money earned by her, teaching school. The money earned by her after her marriage teaching school was community property, and in the absence of testimony of an agreement between her husband and herself that it was to become her separate estate, the land would also, to the extent of the moneys so paid, be community property. In the absence of evidence that the note for $140 given for the deferred payment was paid out of her separate funds, that part of the land in proportion to the amount of said note also became community property.

For the errors pointed out the judgment is reversed and cause remanded.

OPINION ON MOTION FOR REHEARING.

The appellee in his motion for rehearing contends that, having held that appellee was entitled to the writ of injunction prayed for by him, we erred in reversing and remanding the cause. A reconsideration of the pleadings convinces us that this contention must be sustained. The evidence is undisputed that appellee purchased the lands for a valuable consideration by him paid and received a deed of conveyance therefor, which was filed for record in March, 1906. At the time appellants held a judgment against R. H. Simpson, one of the appellee's grantors, but no abstract of said judgment was ever filed in the office of the county clerk of Johnson County; and no lien existed on said land by reason of said judgment. The execution sought to be enjoined by appellee was not levied upon the land until the month of August, 1907, more than a year after appellee's purchase of the lands.

There were no pleadings filed by defendants in the court below, appellants here, that the deed from Sarah U. Simpson and her husband, R. H. Simpson, was simulated and fraudulent, or that it was made to hinder, delay and defraud the creditors of R. H. Simpson. No issue was presented as to the validity of the deed to appellee. Under these facts and in view of the pleadings, it follows that we erred in reversing and remanding the case. Appellee's motion for rehearing is granted, and the judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.