˙ RALLS v. RALLS et al. (No. 2193.)*

(Court of Civil Appeals of Texas. ˙Amarillo. Nov. 7, 1923. Rehearing Denied Dec. 5, 1923.)

I. Appeal and error ⊂⟹927(7)—In passing on peremptory instruction, evidence considered most favorably to appellant.

In passing on the propriety of a peremp- tory instruction, the evidence must be consid- ered in the light most favorable to appellant.

2. Divorce ⊂⟹254 — Evidence held to show property belonged to community and that division was not fair.

In an action to set side a divorce decree and disposition of property, evidence held suf- ficient to warrant a finding that a large part of the property belonged to the community and that the separation agreement did not appor- tion to the wife a fair share thereof.

3. Husband and wife ⊂⟹262(1)—Property pre- sumed to belong to community where deeds do not provide otherwise.

Where deeds to ˙a husband do not provide that the property should be husband's separate property, the· presumption is that it is com- munity property.

4. Husband and wife ⊂⟹255—Property paid for out of husband's separate property belongs to husband.

In the absence of contrary intention, if a husband pays for property in whole or in part

with his separate funds, the property so pur- chased belongs to the husband separately in the proportion that his separate property en- tered into the payment of the price.

5. Husband and wife ⊂⟹264—Evidence held to show stock of merchandise taken out of state was community property.

In a suit to set aside a divorce decree and the disposition of community property, evidence held sufficient to warrant a finding ˙that a stock of merchandise removed from Texas to Indian Territory during the marriage relation was community property, and that the wife there- after did not relinquish her interest therein.

6. Husband and wife ⊂⟹49¾(7) — Whether husband's dealing with community property was with wife's consent so as to· establish gift held for jury.

Even if under the laws of Indian Territory the dealings by a husband with a stock of merchandise with wife's consent, after removal from Texas, would be sufficient to establish a gift of her interest in such property, it would still be for the jury to determine whether the property was used by the husband with the wife's knowledge and consent in such a man- ner as to preclude the inference that she ex- pected him to account for it as her agent or trustee.

7. Courts ⊂⟹95(1), 97(1)—Decisions of fed- eral courts, in Indian Territory and not those of Arkansas, Supreme Court held controlling as to rules determining fact of gift by wife to husband.

Though the laws of Arkansas as they exist- ed in 1884 were extended over Indian Territory by Act Cong. May 2, 1890, § 31, the decisions of the federal courts and not those of the Su- preme Court of Arkansas furnish the ultimate authority for determining the laws of the terri- tory, as to the rules governing the determina- tion of the sufficiency of evidence to show an implied gift from a wife to her husband, and˙ the inferences to be drawn from the husband's possession of wife's separate property, such a decision ·not involving a construction of local laws, but general principles of law.

8. Husband and wife ⊂⟹254—Identity of stock of merchandise as community property held not destroyed by sale and replacement with other goods.

Where a husband carried on business with a stock of merchandise which was community property, the fact that the goods were sold and replaced by others bought with the pro- ceeds did not in the absence of claims of inno- cent third persons so destroy the identity of the fund as community property as to prevent the wife from impressing a trust thereon to the extent of her interest.

9. Husband and wife ⊂⟹255—Wife held to· have interest in land purchased by husband propor- tional to obligation on community to pay therefor.

Even if the initial payments on realty were made out of husband's separate property, the balance due became a community obligation, and unless it was shown that deferred payments

---

⊂⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction January 30, 1924.

were to be made out of husband's separate property, the community would own a proportional interest in the land.

**10. Husband and wife ⬥264—That husband's bank account included community money held to rebut presumption of his ownership thereof.**

Where husband's bank account included money received from community property, this was sufficient to rebut the presumption that the deposit was his separate property under Rev. St. art. 4622.

**11. Divorce ⬥254—Evidence held to warrant finding partition agreement obtained by husband's fraud.**

In an action to set aside a divorce decree and disposition of community property, evidence *held* sufficient to show that the husband so managed the matter as to prevent wife from ascertaining the extent of her rights and the extent and value of the property, so that a finding that the partition agreement was produced by fraud would have been sustained.

**12. Divorce ⬥254—Husband's fraudulent misrepresentation of amount of community property held to warrant setting aside divorce decree.**

Where a husband's fraud in misrepresenting the amount and value of community property prevented the wife from having a real trial of her rights in the divorce proceeding and division of the community property, the court would have been justified in setting aside the decree.

**13. Divorce ⬥254—Divorced wife held not in pari delicto in fraudulent scheme to obtain divorce.**

Where, in an action to set aside a divorce decree and disposition of community property on the ground of husband's fraudulent misrepresentation as to the value of such property, the petition as a whole refuted the idea that the wife knowingly entered into a fraudulent scheme to secure the divorce, she could not be considered in pari delicto, and therefore not entitled to relief, notwithstanding certain statements in the petition pointing to a different conclusion.

**14. Divorce ⬥254—That court not justified in setting aside divorce held no obstacle to reopening division of community property.**

Even if the evidence in an action to set aside a divorce decree and disposition of community property made therein on the ground of fraud was insufficient to set aside the divorce, this would be no obstacle to reopening the matter of the division of the property.

**15. Witnesses ⬥148—Evidence inadmissible against executor is inadmissible against other defendants where only one judgment can be rendered; "independent executor."**

Under Rev. St. art. 3690, providing for the exclusion of certain evidence in actions against executors, evidence of a husband's representations and acts which induced wife to sign a separation agreement was inadmissible in an action by the wife against husband's independent executor to set aside the divorce and disposition of community property, on the ground of fraud, since an independent executor is an executor, even though such evidence would have been admissible against the devisees and legatees who were joined as parties defendant, where the issues could not be separated so as to render separate judgments against the executor and other defendants.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Executor.]

**16. Evidence ⬥368(13) — In action to set aside divorce and disposition of community property, wife entitled to examine husband's books and records.**

In an action to set aside a divorce decree and disposition of community property on the ground of husband's fraud, the wife has a right to a reasonable opportunity to inspect the books and records of husband's business, and the mere right to examine such records during the progress of the trial and in the presence of waiting court and jury, and the right to call for some specific material out of the mass, would not be such reasonable opportunity for examination as should be afforded.

Appeal from District Court, Crosby County; W. R. Spencer, Judge.

Suit by Dollie M. Ralls against P. B. Ralls and others. Judgment for defendants, and plaintiff appeals. Reversed, and remanded.

Preston Martin, of Weatherford, and Goree, Odell & Allen, Ernest May, and Hampton Spiller, all of Fort Worth, for appellant.

Bean & Klett, of Lubbock, P. B. Randolph, of Plainview, and Gibson & Dalton, of Crosbyton, for appellees.

BOYCE, J. On November 16, 1920, the district court of Crosby county, in a suit pending in said cause No. 448 and styled "Mrs. Dollie M. Ralls v. John R. Ralls," entered a judgment of divorce and disposition of the community property of the parties to the suit. The judgment disposing of the property was entered in pursuance to an agreement of the parties filed in said cause, and decreed that Mrs. Ralls recover of John R. Ralls certain specific parcels of property, valued in the aggregate at the sum of $65,800, and the further sum of $10,000 cash. All other community property without particular description or valuation was decreed to John R. Ralls, subject to the payment of all community debts. John R. Ralls died on October 19, 1921, and thereafter Mrs. Dollie M. Ralls filed this suit against P. B. Ralls, the independent executor of the will of the said John R. Ralls, and the other defendants, who are devisees and legatees under the said will, to set aside said judgment in said cause No. 448, and the agreement for distribution of the community estate belonging to the said Dollie M. Ralls and John R. Ralls. Plaintiff al-

leged that, at the time of the agreement and judgment, the community property belonging to the said parties was, after deduction of all debts, of value in excess of $500,000; that plaintiff was awarded in said disposition property worth about $40,000 or $50,000; that the agreement and judgment based thereon were procured by fraud, coercion, and intimidation, which rendered the judgment of divorce and the partition of the property invalid. No detailed statement of the pleading is necessary, because there is no question of its sufficiency to raise the issues of fact which will appear from our further statement of the case.

The trial court instructed the jury peremptorily to find for the defendants, and the appeal is from the judgment entered on this verdict. The record does not disclose what particular theory of the law or evidence controlled the trial court in his action. Appellees, in their brief, take the position that the peremptory instruction is sustained by any one of three theories. The following summary of these will assist in an understanding of the relevancy of the facts to the questions that are to be decided:

(1) That no fraud in the settlement agreement or procurement of the divorce was shown. As subdivisions of this general proposition it is said (a) That the record shows that the bulk of the property standing in the name of John R. Ralls at the time of the separation agreement, and which it was conceded was of more than $500,000 in value, was the separate property of John R. Ralls, and that Mrs. Ralls received a fair share of the community property; and (b) that no fraud was practiced in securing her assent to the agreement, it being made after an independent investigation of her own as to the property and its value.

(2) That the judgment in cause No. 448 precluded any further inquiry into the question of fraud in the agreement on which the judgment of distribution was rendered.

(3) That Mrs. Ralls' pleading and proof, that the judgment of divorce was the result of collusion between herself and husband, showed a participation on her part in the perpetration of a fraud on the trial court, and would preclude her from now making any complaint against said judgment.

The record is very voluminous. While a statement of the facts in some detail is necessary to a proper discussion of the case, we state results of the evidence rather generally in preference to making a detailed recital of the evidence which would justify the more general conclusion.

[1] In arriving at these results, the evidence has been considered in the light most favorable to appellant, as must be done in passing on the propriety of a peremptory instruction.

[2] John R. Ralls and Dollie M. Martin, the plaintiff, were married in Texas, in 1890. John R. Ralls was at that time engaged in the mercantile business in Texas, and his interest in the business was worth $6,500, or less. The Ralls moved to the Indian Territory in 1892, and John R. Ralls continued in the mercantile business, setting up the business by transportation from Texas to the Indian Territory of the stock of goods on hand at the time of the move. The value of the stock of goods at such time was from $10.000 to $15,000. The Rallses continued to live in the Indian Territory until in 1907 or 1908, when they moved back to Texas. The mercantile business was continued until some time in 1905, at which time the stock of goods was traded in on the Mickle lands, hereinafter mentioned. During the time that John R. Ralls resided in the Indian Territory, he was engaged in other lines of business and acquired other property in the Indian Territory, in particular, some lots and real estate hereinafter mentioned and some bank stock in a bank at Ryan, Okl. During this time he bought some land in Clay County, Tex., paying therefor the sum of $12,000 or $13,000, paying partly cash and executing notes for deferred payments. For several years he was engaged in the ranching business on these lands. The cattle were finally sold off, and in 1905 the property was sold and he and his wife conveyed it to the purchaser for a recited consideration of $28,360.

In 1907 or 1908 the Rallses moved to Crosby county, Tex., and thereafter John R. Ralls was engaged in active business, ranching on the Mickle lands, improving said lands, buying and selling lands, etc. The following list contains a description of the property held by John R. Ralls either for himself or for the community at the time of the divorce with the valuation placed thereon by some of the witnesses:

| Section. | Acres. | Value. |
|---|---|---|
| (1) N. ½, Sec. 892, | 320 | $ 24,000 00 |
| (2) E. pt. Sec. 60, L. 2, | 110 | 8,250 00 |
| (3) Sec. 61, L. 2, | 162.9 | 12,217 50 |
| (4) Sec. 13-20-21, L. 4, | 255.72 | 19,179 00 |
| (5) Sec. 14-19-23, L, 4, | 289.07 | 21,680 25 |
| (6) Sec. 15-19-23, L. 4, | 249.92 | 18,744 00 |
| (7) Sec. 16-17-24, L. 4, | 210.73 | 15,804 75 |
| (8) Sec. 15-16-21-22, L. 4, | 640 | 48,000 00 |
| (9) Sec. 1-2-3-6-7-8, L. 4, | 960 | 72,000 00 |
| (10) Town lots and buildings | | 204,050 00 |
| (11) Mickle land and lot notes | | 80,230 10 |
| (12) Notes on C. B. land, sold | | 20,063 49 |
| (13) Unsecured notes | | 4,159 26 |
| (14) Miscellaneous personal | | 37,003 79 |
| (15) Terry county land 640 | | 9,600 00 |
| | | $594,982 14 |

The debts owed at this time amounted to about $57,000. There were other debts aggregating nearly $100,000, representing amounts due on purchase of the C. B. Live Stock Company lands and conveyed to others, on which P. B. Ralls would be liable, but these debts had been assumed by others, and,

as the security was amply sufficient to secure their payment, they may be disregarded in arriving at the value of the estate.

Items 2, 3, 10, and 11 represent what is left of what is known as the Mickle lands and notes due on sale of parts thereof; items 4, 5, 6, 7, 8, 9, and 12 pertain to the C. B. Live Stock Company lands hereinafter mentioned. As it was the appellee's contention that all of this property was the separate property of John R. Ralls, we make the following statement as to the acquisition of the various tracts of land mentioned:

(1) The Mickle lands consisting of 7,500 acres in Crosby county were acquired in 1905 and were paid for as follows: First, delivery to the vendor of the mercantile stock in the Indian Territory valued in the trade at about $18,000; second, conveyance to such vendor of some lots at Ryan, Ind. T., valued at about $8,000, the deed of conveyance being signed by Ralls and his wife; third, assumption of the payment of indebtedness outstanding against the Mickle lands which was subsequently paid and amounted to about $10,-000. The Rallses moved onto the Mickle lands when they came to Texas and ranched thereon for several years. Later the town of Ralls was located on these lands, and a considerable portion thereof was sold, the list above representing the unsold balance. During this time improvements were put on the property at a cost of about $140,000.

(2) In 1907, shortly before the Ralls moved to Texas, John R. Ralls bought the north half of section 892, in Crosby county, shown on the foregoing list, paying therefor $7,520 by check drawn on his account in a bank at Ryan, Okl., and executing notes for $3,360 balance. It is not shown how these notes were paid.

(3) The section of land in Terry county was acquired in 1911. It was paid for by the conveyance of one-fourth section of land in the Indian Territory, title to which stood in the name of John R. Ralls, valued at $4,000, and by the execution of notes and assumption of indebtedness against the land aggregating about $3,000. It is not shown how the deferred payments due on this land were met.

(4) Beginning with the year 1916, and during several succeeding years, John R. Ralls bought a quantity of land from the C. B. Live Stock Company. These lands were bought largely on credit. The cash payments were made out of funds on deposit to John R. Ralls' credit in a bank at Ralls. A large part of these lands were sold, the list above showing the balance of the lands still on hand at the time of the separation agreement.

The deeds to all lands purchased were to John R. Ralls without recitation to indicate that the property conveyed was his separate property.

While the Rallses lived in the Indian Territory and afterwards in Texas, no account was kept of any separate or community property, but John R. Ralls conducted the business in the manner usually done by the husband, he managing the business and Mrs. Ralls attending to the household duties. All moneys of every character received were placed in one account in the banks in the Indian Territory before removal to Texas, and after removal in Texas banks, to John R. Ralls' credit; and he drew against these accounts in the buying of property, improving it, the general management of the business, and payment of all character of expenses. It seems quite probable that neither the husband nor the wife, during the residence in the Indian Territory, or in Texas, took any thought of the question as to whether the property being acquired was the community property or separate property of either. There are several things that would indicate that John R. Ralls regarded all the Texas property as belonging to the community estate of himself and wife. He made a will in 1916, which made no reference to any separate estate in him, and which provided that the executor named by him should handle the property with due regard to the community interest of his wife. The separation agreement purported to be an agreement for a division of the community property. The property which was set aside to Mrs. Ralls by the agreement was the north one half of said section 892 and certain property out of the Mickle lands, both of which properties it is now contended constituted separate property of Ralls, but which were by the agreement referred to as community property.

A great deal of evidence was introduced as to the laws of the Indian Territory, affecting the marital property rights of the parties during the time of the residence of the Rallses in that jurisdiction. The act of Congress (Act May 2, 1890, c. 182, 26 Stat. 81, § 31) which established the courts of the Indian Territory put in force in and extended over the Indian Territory the laws of the state of Arkansas, as published in 1884, in the volume known as Mansfield's Digest of the Statutes of Arkansas. One of the sections of this statute thus adopted (section 566) provided that the common law of England and statutes of the British Parliament in aid thereof not inconsistent with the Constitution and laws of the United States and of the state of Arkansas should be the "rule of decision in this state unless altered or repealed by the General Assembly of this state." Other sections of Mansfield's Digest which thus became the law in the Indian Territory, declared that all property acquired by a married woman before or after marriage by gift, devise, or descent, or by her own activities in trade, business or otherwise, should constitute her separate property and might be managed and sold by her in the same manner as if she were a feme sole.

Section 4637 of these laws reads as follows:

"The fact that a married woman permits her husband to have the custody, control and management of her separate property shall not of itself be sufficient evidence that she has relinquished her title to said property; but in such case the presumption shall be that the husband is acting as the agent or trustee of the wife. This presumption may be rebutted by any evidence establishing a sale or gift by the wife to the husband of such property."

Likewise, under the laws of that jurisdiction, all property acquired by the activities of the husband became his property, and the wife had no interest therein except a dower interest in the real estate, if she had not relinquished it by a deed of conveyance, and a dower interest in the personalty on hand at the time of the husband's death. There was no such thing as community property in the meaning of that term under the Texas laws.

The defendant's counsel took the depositions of several Oklahoma lawyers, propounding to them hypothetical questions calling for an answer as to what, if any, would be the interest of Mrs. Ralls in the Indian Territory business at the time of its disposition. It is apparent from these answers that there were no decisions of the court of that jurisdiction directly in point. One of the best qualified of these witnesses confessed that it was "difficult" for him to answer "definitely who was the owner in 1905 of the goods, merchandise, and personal property of the business." He then states that if it be assumed that Ralls conducted the business "alone and for himself * * * that he treated it as his own and conducted the business as his own * * * that he treated it as his own property and she (Mrs. Ralls) acquiesced therein," the property would be the separate property of John R. Ralls, and the action of the parties in reference thereto would indicate a gift by Mrs. Ralls of her interest in the property to her husband. He refers to the following authorities as sustaining this opinion: Wyatt v. Scott, 84 Ark. 355, 105 S. W. 871; McBroom v. McBroom, 180 S. W. 210;[1] Loyd v. Bennett, 124 Ark. 403, 185 S. W. 292; Wallace v. Watson, 140 Ark. 430, 215 S. W. 892; Higgins v. Johnson's Heirs, 20 Tex. 389, 70 Am. Dec. 394. Other witnesses testified more positively in behalf of the defendants that all of the property in the Indian Territory would be the property of John R. Ralls, under the facts stated. All of the witnesses agreed that the status of the property when removed to the Indian Territory would be the same in the Indian Territory as in Texas, citing Thorn v. Weatherly, 50 Ark. 237, 7 S. W. 33. But it seemed to be the idea of most of them that,

[1] Reported in full in the Southwestern Reporter; reported as a memorandum decision without opinion in 120 Ark. 631.

when none of the original property was left, the property acquired by changes in the business, reinvestment of the property, etc., would become the property of the husband on account of an implied gift.

Another lawyer testifying for the plaintiff said that in his opinion on removal of the property to the Indian Territory Mrs. Ralls would have had the right of partition, and that her interest after the removal would be regarded as her separate property and be subject to the terms of section 4637 of Mansfield's Digest, already referred to; that there was no decision as to what the resultant rights of the parties would be after the property had been handled as the facts indicate; but that in his opinion if there was a gift of the wife's interest in the property to the husband then she would be entitled to a proportionate share in the profits, allowing a reasonable compensation to the husband for management thereof.

After the move to Texas and as early as 1913, John R. Ralls began to talk of divorce from his wife. Apparently he had no grounds on which he could secure a divorce, but his plan was to have Mrs. Ralls sue for a divorce from him. It is in evidence that he proposed on several occasions to give her from $10,000 to $50,000 if she would leave him and get a divorce. In 1916 he informed an attorney, who had been representing him in other matters for several years, that he desired the attorney to bring suit for divorce for Mrs. Ralls. This attorney went to see Mrs. Ralls and she said, "If nothing else will do them but a divorce I will give you what you want," and gave him some information on which he instituted suit for divorce in her name. Later Mrs. Ralls told the attorney that she was not exactly satisfied with the division of the property. The attorney afterwards informed John R. Ralls that "he wanted out" of the case as he did not think Ralls was treating Mrs. Ralls right. This suit was thereafter withdrawn.

In 1920, some months before the divorce suit was filed, the Ralls together visited another lawyer and consulted him in reference to filing a divorce suit for Mrs. Ralls. In this consultation this attorney, so Mrs. Ralls testified, said, "Remember, if I represent Mrs. Ralls I will represent her rightly." He was not employed to represent her. Later John R. Ralls had another attorney, who had been representing him in various matters for a number of years, to draw the separation agreement. Mrs. Ralls was not consulted before the preparation of this agreement, it being drawn on data furnished by John R. Ralls. The attorney, after the agreement was drawn, presented it to Mrs. Ralls for signature. She asked that a vacant block in the town of Ralls, valued at about $1,800, be allowed her in addition to what was allotted to her under this agreement, and on Ralls' assent thereto, given over the phone

in a conversation between the lawyer and Ralls, this block was inserted in the agreement, and she signed it. This agreement is the one attacked by this suit. It recites that it is made for "the purpose of making a fair and equitable division of their community property," and provides that in the event Mrs. Ralls shall procure a divorce there shall be conveyed and set aside to her (1) the north ½ of section 892, referred to in the foregoing list; (2) two brick buildings and a vacant block in the town of Ralls, this being a part of the Mickle lands. The contract further provided that Mrs. Ralls should be paid $200 in cash at the time of the execution thereof, it being recited in this connection that—

"this agreement is being made in contemplation of the permanent separation and divorce of the parties hereto, and in contemplation of the fact that the said party of the first part (Mrs. Ralls) will immediately upon the execution hereof, institute a suit against the party of the second part in the district court of Crosby county, Tex., for divorce, and it is the mutual intention of the parties hereto that said payment is in the nature of and in lieu of temporary alimony, and that no temporary alimony will be asked for by said party of the second part in said petition for divorce."

The contract also provided for the payment to Mrs. Ralls of $10,000 in cash at the time of entry of the decree of divorce, and bound John R. Ralls to provide for the payment of $10,000 out of his estate upon his death. This agreement also provided that each party would release unto the other all rights which either might have in the separate property of the other, and that "upon the granting of said decree of divorce the court will be asked to give effect to the provisions hereof." It was agreed that all property not specifically allotted to Mrs. Ralls should be set apart and conveyed to the said John R. Ralls, who assumed the payment of all community debts existing at the date of the agreement. No discussion was had between Mrs. Ralls and the attorney as to the amount or value of the community property or the fairness of the agreement. When the contract was signed this attorney asked Mrs. Ralls "if it would be agreeable for him to represent her in the divorce suit," to which she assented and said suit was thereupon filed. The petition alleged cruel treatment, to wit, that the said John R. Ralls had cursed and abused Mrs. Ralls, striking her in the face with his fist, etc. The petition also alleged that the community estate was largely indebted; that the division agreement was a fair and equitable partition of the community property and asked that the court, upon granting the divorce, approve it. Mrs. Ralls testified that she had a general knowledge of the property but did not know its value or the details thereof and understood that the community estate was indebted in very large amounts. She was not permitted to testify to any representations or conduct of her husband in reference to the divorce suit or agreement for division of the property. The only evidence of any outside information or advice that she received in regard to the matter is that of a witness who had been a partner with John R. Ralls in the original purchase of the C. B. Live Stock Company lands, who testified that, before the divorce, Mrs. Ralls approached him for information in regard to the property; that he answered her questions and gave her information that would be sufficient to give her a fair knowledge as to the extent of the property.

The hearing of the petition for divorce was had in the sheriff's office, "to avoid publicity." There were present besides the district judge and perhaps the clerk, the attorney who filed the suit for Mrs. Ralls, another attorney representing John R. Ralls and Mrs. Ralls. The petition for divorce was read and Mrs. Ralls was asked if the statements made therein were correct. Her answer was in the affirmative. Whereupon the court entered judgment, granting a divorce and affirming the division agreement.

[3, 4] Since there was no provision in the deeds to the Texas property that such property was the separate property of John R. Ralls, the presumption is that it belonged to the community. If it be shown that the property so purchased was paid for in whole or in part by funds belonging to John R. Ralls separately, and nothing be shown from which it could be said that, as a matter of fact, it was the intention of John R. Ralls to make the property community property, then the property so purchased would belong to him separately in the proportion that his separate property entered into the payment of the consideration therefor. Cummins v. Cummins (Tex. Civ. App.) 224 S. W. 904.

[5] But the appellees undertake to show that most of the property was paid for with separate funds of John R. Ralls, and to thus rebut the presumption in favor of the community ownership. As a part of this larger statement, they say that all of the Indian Territory property was the separate property of John R. Ralls. Mrs. Ralls did not on the trial trace any of her separate property or any community property into any definite fund or specific property in the Indian Territory except the mercantile business, so that we are inclined to think that, except as to such business, it should be held that under the laws of the Indian Territory all of the other property held in that jurisdiction was the separate property of John R. Ralls. As to the mercantile business, we think that the evidence would warrant a finding that Mrs. Ralls retained her interest in it until it was sold in exchange for the Mickle lands. The mercantile stock, at the time of its removal to the Indian Territory, was owned either in whole or in part by

the community. If it could not be definitely determined what John R. Ralls' separate interest therein might be, then it should be held that this property was wholly community property at the time of the move. Mrs. Ralls' interest in the property was not affected by the removal of the business to the Indian Territory.

[6] But it is the theory of the appellees that the subsequent conduct of the business in the Indian Territory would conclusively establish a gift from the wife to John R. Ralls of her interest in the property. In connection with the testimony of the Oklahoma lawyers, we have read the decisions cited by them in support of their conclusions and referred to in our statement. These decisions were rendered by the Supreme Court of Arkansas after the Indian Territory had become a part of Oklahoma and a state of the Union; and we may say that, even if these decisions are to be accepted as declaring the law of the Indian Territory as of the time when the property rights of John R. Ralls and his wife were fixed, yet we think there would have been left a question of fact for the decision of a jury in the present trial as to whether the property was so used by the husband—

"with the knowledge and consent of the wife in such manner as to preclude the idea or inference that she expected him to account for same to her as an agent or trustee." Wyatt v. Scott, 84 Ark. 358, 105 S. W. 872.

[7] But we are of the opinion that the decisions of the Supreme Court of Arkansas do not furnish the ultimate authority for determining what was the law of the Indian Territory as to this matter. The law of the Indian Territory was to be administered by the federal courts. The common law put into effect was the common law as declared and applied by the federal courts, and the decisions of the federal Appellate Tribunals furnished the best authority as to what such law was. Lamb v. Hardy, 109 Tex. 414, 211 S. W. 446 (4); M. K. & T. Ry. Co. v. Wise, 101 Tex. 459, 109 S. W. 112; St. L. & S. F. Ry. Co. v. Summers, 51 Tex. Civ. App. 133, 111 S. W. 211. It is true that the federal courts would follow the courts of Arkansas in the construction of local laws; but we do not have such a case. The Supreme Court of Arkansas, in holding that certain facts were sufficient to warrant a finding of implied gift, was not construing a statute, except in a negative way, in declaring that a certain statute had no application, but was deciding the question on general principles of law. See Wyatt v. Scott, 84 Ark. 355, 105 S. W. 871. We must look, therefore, to the decisions of the federal courts for the ultimate law of this phase of the case. The case of Stickney v. Stickney, 131 U. S. 227, 9 Sup. Ct. 677, 33 L. Ed. 136, is in point. In that case, in dealing with questions growing out of facts which make the statement applicable here, the court said:

"We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him."

Other parts of the opinion further develop the idea that a gift is not to be inferred from mere possession of the property. It is said in this connection:

"If mere possession were sufficient evidence of a gift, the act of 1848 [that allowing the wife to own property separately] would be useless to the wife. Nothing is more easy than for the husband to obtain possession, even against the consent of the wife. And where he obtains it with her consent, it can be at most but slight evidence of a gift."

[8] The facts, in our opinion do not conclusively establish a gift by Mrs. Ralls to her husband of her interest in the mercantile business moved into the Indian territory. It is no doubt true that none of the original goods carried to the Indian Territory remained in stock when the business was sold to Mickle in 1905, but the evidence shows that the business was carried on continuously, which would mean that as goods were sold they were replaced by purchases made with the proceeds of former sales, etc. It was the same enterprise or business, and the identity of the fund was not, in our opinion so destroyed as to prevent Mrs. Ralls from following her property into it and impressing it with a trust in her favor, at least in the absence of any claims in behalf of innocent third parties. Byrne v. McGrath, 130 Cal. 316, 62 Pac. 559, 80 Am. St. Rep. 127; Perry on Trusts, § 838.

[9] Some credit entered into the consideration in the purchaser of all the real property. Even if the initial payments were made out of the husband's separate property, the credit would be a community obligation, and, unless it were shown that it was intended that these deferred payments should be made out of the separate property of the husband, the community would own an interest in the land in the proportion to the credit part of the consideration. McClintic v. Midland Grocery Co., 106 Tex. 32, 154 S. W. 1157; Barr v. Simpson, 54 Tex. Civ. App. 105, 117 S. W. 1041 (3); Moline Plow Co. v. Clark (Tex. Civ. App.) 145 S. W. 266; Uglow v. Southern (Tex. Civ. App.) 250 S. W. 739; Guest v. Guest (Tex. Civ. App.) 208 S. W. 547. This proposition alone would have sustained a finding that a very large interest in all the real estate on hand at the time of the separation agreement belonged to the community.

[10] Payments on the purchase of the C. B. Livestock Company lands, and of expenses incurred in the improvement of the Mickle

lands, were made by checks drawn by John R. Ralls on funds deposited to his credit in the bank at Ralls. It is said that these funds were his separate property by virtue of Rev. St. art. 4622. The facts, we think, are sufficient to rebut any presumption that this deposit was his separate property, since it appears that it was the only account kept by John R. Ralls, and that money received from every source, some of which was community, was handled through this account. Hightower v. Hightower (Tex. Civ. App.) 236 S. W. 197.

We conclude therefore that under the law and the facts the jury could have found that a large part, if not all, of the property listed above belonged to the community, and that the separation agreement did not apportion to Mrs. Ralls a fair and equitable share thereof. Such fact alone would go far toward sustaining a finding that the agreement was fraudulent. Moor v. Moor, 24 Tex. Civ. App. 150, 57 S. W. 992; Cox v. Mailander (Tex. Civ. App.) 178 S. W. '1012; Kuehn v. Kuehn (Tex. Civ. App.) 232 S. W. 925 (6); Id. (Tex. Com. App.) 242 S. W. 721.

"As to community property, a husband is, in a restricted sense, a trustee for his wife, bound to good faith, and derelict in duty if he conceals knowledge from her necessary to enable her to protect her rights." McMurray v. McMurray, 67 Tex. 671, 4 S. W. 360.

[11] The other facts we have detailed tend to show not only that Mrs. Ralls did not receive a fair share of the property, but that the whole matter was so managed by her husband as to prevent her from ascertaining the extent of her rights and having any real and independent representation in the protection thereof; so that, in our opinion, a finding by the jury that the partition agreement was procured by fraud would have been sustained by the evidence. The evidence of the witness Bowen that Mrs. Ralls was informed as to the extent of the property and its value is not conclusive against her. She denies that she had accurate knowledge as to such matters, and testifies that she thought the indebtedness against the property was very large. Bowen's testimony shows how she might very well have formed a wrong impression even from what he told her as to the real nature and extent of the indebtedness. It was said in the case of Cox v. Mailander, supra, though not necessary to the decision of the case, that knowledge as to the character and amount of the community estate "does not prevent the partition from being so unfair that it should not be enforced by a court of equity."

[12] Appellee's second general proposition in support of the judgment is, in substance, that the fairness of the partition agreement was in issue, potentially, at least, in Cause No. 448, and that the judgment in that case is conclusive as to all matters that might have been litigated. The courts, in determining when a judgment may be set aside for fraud, have been influenced by two policies which tend to divergent results; the one, to grant relief against fraud on the general theory that "fraud vitiates everything"; the other, a rule of public policy that would protect the judgments of the courts in the interest of finality of litigation. It would be profitless to enter upon an exhaustive examination of the many decisions on this subject; they are not altogether harmonious. The case of U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, is most relied upon by appellees. While the case is not in point, in fact, it is true that much of the reasoning of the decision supports appellees' view of the law, though there are some parts of the opinion that are not so favorable to them. The court in that case refused to set aside a judgment secured by the fraud of one of the parties in procuring perjured testimony and false documents in support of his claim on trial. But our own Supreme Court in the case of McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357, followed a more liberal policy, holding that a judgment might be set aside where it was procured by false testimony, willfully and knowingly offered by the successful litigant. The court refers to the case of U. S. v. Throckmorton, supra, and, after admitting that its tendency is opposed to the opening of the judgment in the case under examination, has this to say about the decision:

But after referring to classes of cases in which relief might be given, the court said: "In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court."

Judge Stayton then argues to the conclusion that knowingly offering false testimony is such fraud in procuring the judgment as would justify the court in setting it aside for fraud. See also Fisk v. Miller, 20 Tex. 579; Davis v. Jones (Tex. Civ. App.) 149 S. W. 727. So in this case, the fraud, if there was any, prevented the wife from having a real trial of her rights. The agreement itself contemplated a mock trial, and the use of the judgment of the court to consummate the fraud. The fraud was upon the court as well as the wife. In the cases of Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 442 (see particularly opinion on motion for rehearing, page 450), and Celli v. Sanderson (Tex. Civ. App.) 207 S. W. 179, judgments rendered on division agreements were set aside for fraud on the wife in respect to the agreement. We conclude, therefore, that we

cannot sustain the peremptory instruction on this theory of the law.

[13] Some of the statements in plaintiff's petition are relied on by appellees to show that appellant joined with her husband in the perpetration of a fraud upon the court in securing the judgment under attack, and for this reason she should be denied relief. The petition as a whole refutes the idea that the plaintiff knowingly entered into any fraudulent scheme to secure the divorce. She was not, according to the whole tenor of the pleading, in pari delicto. Futch v. Sanger (Tex. Civ. App.) 163 S. W. 599; Pomeroy's Equity Jurisprudence, § 942; 13 C. J. 498.

[14] We doubt whether the evidence would authorize the setting aside of that part of the judgment which granted the divorce, but this would be no obstacle to a reopening of the matter of the division of the community property. Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 442.

[15] Appellant complains of the action of the trial court in excluding the testimony of Mrs. Ralls as to representations and acts of her husband which induced her to sign the separation agreement. Objections were sustained to this testimony on the ground that, the suit being against P. B. Ralls, executor of the estate of John R. Ralls, the evidence came within the provisions of article 3690, R. S. P. B. Ralls was by the will made "independent executor," and appellant contends that the statute does not apply to this kind of an executor. The statute makes no distinction as to the kind of executors, simply providing for the exclusion of certain evidence "in actions by or against executors * *. * in which judgment may be rendered for or against them as such." An independent executor is an executor, and we know of no good reason why the statute should not apply in such case. The will of John R. Ralls disposed of all of his property. It provided that, after payment of certain legacies, all of the residue of his estate should be divided equally between the children of his brothers, P. B. Ralls and E. M. Ralls. The devisees and legatees were made parties defendant with the executor, and it is claimed that the evidence was admissible as to them and should have been admitted in any event under instructions that it should not be considered as against the executor. The authorities seem to sustain this proposition where the rights of the executor and the other defendants were severable. Emerson v. Scott, 39 Tex. Civ. App. 65, 87 S. W. 369; Wilmurth v. Thompkins, 22 Tex. Civ. App. 87, 53 S. W. 833; Harris v. Warlick (Tex. Civ. App.) 42 S. W. 356; Eagan v. Kenney, 75 N. H. 410, 75 Atl. 98; Weston v. Elliott, 72 N. H. 433, 57 Atl. 336; Oswald v. Nehls, 233 Ill. 438, 84 N. E. 621; Goff v. Goff, 176 Ky. 243, 195 S. W. 438; Encyclopedia of Evidence, vol. 12, p. 863. In a case like this, however, we do not see how it would be practical to separate the issues and render different judgments against the executor and the other defendants. In such case, we believe the testimony should be excluded altogether. The following rule quoted from the text of the reference to the Encyclopedia of Evidence seems to us to be sound:

"Where the protected party has one or more coparties, the adverse party, though incompetent against the party protected, is nevertheless competent against his coparties, at least where their rights and liabilities can be separately determined; but where only one judgment or determination of the issues is possible and must operate equally against the protected as well as the unprotected parties, the witness is totally disqualified."

[16] Appellant presents another proposition which complains of the action of the trial court in reference to the examination of certain books, papers, and records pertaining to the business of John R. Ralls brought into court by the executor in obedience to a subpœna duces tecum. We need not go into detail as to this proceeding. In view of another trial we say that appellant should be given a reasonable opportunity to examine these records under a proper provision for protection thereof. Rush v. Browning, 103 Tex. 649, 132 S. W. 764, 18 C. J. 1117. The mere right to examine such a large amount of material while the trial was in progress, and in the presence of waiting court and jury, and the right merely to call for some specific material out of the mass would not, in our opinion, be such reasonable opportunity for examination as should be afforded.

Reversed and remanded.

RANDOLPH, J., not sitting.